AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Cristhian Hernan Dupre Arroba and | ) Case No. 14-6416-BSS |
| Marco Julio Cannizzo Gaona | ) |
| | ) |
| | ) |
| _Defendant(s)_ | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 26, 2014__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | possessing with intent to distribute cocaine; conspiring to commit said offense |
| Title 18, United States Code, Section 2 | aiding and abetting the offenses above |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Leslie A. Beard, Special Agent, FBI
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 11/27/2014

City and state: Ft Lauderdale, Fl.

_____
Judge's signature

Barry S. Seltzer, Chief U.S. Magistrate Judge
_Printed name and title_

SCANNED

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Leslie A. Beard, being duly sworn, depose and state as follows:

1. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI) in Miami, Florida (Miami Field Office). I have been employed as a Special Agent for approximately eight (8) years. In this capacity, I am authorized to investigate violations of Title 18 and Title 21 of the United States Code.

2. During my law enforcement career, I have participated in the execution of arrests and search warrants in money laundering and narcotics cases. I have received specialized training and experience in money laundering methods and narcotics smuggling and distribution, including, but not limited to, the means and methods used by traffickers to conceal the origin of their illicit proceeds. I have participated in various aspects of money laundering and narcotics investigations to include the debriefing of defendants, informants, and witnesses who had personal knowledge of major narcotics trafficking organizations.

3. The information in this Affidavit is submitted in support of a criminal complaint against Cristhian Hernan Dupre Arroba ("Dupre") and Marco Julio Cannizzo Gaona ("Cannizzo").

4. The information in this Affidavit is the result of my own investigation as well as information provided to me by other investigators, information provided by confidential sources of information, shared intelligence through FBI domestic and foreign offices, public sources and business records, and my experience and background as a Special Agent for the FBI. In each instance when I recite information from others, I have gained that information either by talking directly to such investigators and law

enforcement officers or reviewing written reports of their investigation, or both.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of the defendants, I have not included each and every fact known to me concerning this investigation.

## SUMMARY OF INVESTIGATION

6. Since May of 2014, agents in the FBI's Miami Field Office, assisted by other law enforcement officers and agencies, have been investigating the money laundering and drug smuggling activities of an Ecuadorian based drug trafficking organization (DTO), which is believed to be headed by Robinzon Adrian Arroyo Yepez ("Arroyo Yepez"), an Ecuadorian citizen. This investigation was initiated based on information provided by a confidential source ("CS-1"). During the course of this investigation, agents have corroborated certain facts and information provided by CS-1 and have found the information to be credible and reliable. CS-1 reported that, beginning in or about October of 2013, Arroyo Yepez was directing the delivery of bulk currency and checks derived from proceeds of drug trafficking to CS-1 to be laundered into several United States and international bank accounts in furtherance of the DTO's criminal activity.

7. In addition, CS-1 reported that on two separate occasions members of the DTO requested CS-1's assistance in importing kilogram quantities of cocaine into the Southern District of Florida. The most recent of these occasions was in or about early October of 2014. From on or about October 6 through on or about October 9, 2014, CS-1 had a series of conversations with various members of the DTO during which CS-1 learned of the DTO's plans to import approximately 500 kilograms of cocaine into the United States from Venezuela. The DTO requested that CS-1 facilitate the rental of an

airplane hangar in support of the importation.

8. During the conversations, Arroyo Yepez informed CS-1 that the DTO had acquired an airplane which was to be used to facilitate the DTO's drug trafficking. Arroyo Yepez told CS-1 that the airplane was en route to Las Vegas, Nevada on a test run to determine if the aircraft could successfully enter the United States without interference from law enforcement. If the trip was successful, the DTO would then request CS-1's assistance to change the title and tail number of the aircraft. The aircraft would then be used to transport the aforementioned 500 kilograms of cocaine to Fort Lauderdale, Florida. Based on the information provided by CS-1 and additional information acquired in the investigation, law enforcement was able to identify the aircraft as a 1976 Gulf Stream II, Serial #193, bearing tail number N227LA at the time, and confirm its arrival into Las Vegas. The aforementioned conversations were consensually recorded.

9. On or about October 28, 2014 the DTO arranged for the subject aircraft to be flown at a later date to Fort Lauderdale Executive Airport for storage in a hangar, located at 5555 N.W. 15th Ave., Ft. Lauderdale, Florida 33309, hangar # 66. In or about late October 2014, in a series of text messages between CS-1 and Arroyo Yepez, Arroyo Yepez informed CS-1 that Arroyo Yepez would be sending CS-1 funds to cover the expenses related to the preparation of the aircraft.

10. On or about October 30, 2014, CS-1 received a DHL envelope, which contained a signed $50,000 check with the "pay to the order" information left blank. During a series of text messages between CS-1 and Arroyo Yepez, CS-1 texted, "I received the other envelope as well." Arroyo Yepez responded, "Don't be using those 50000 for anything because they are for the trip."

3

11. On or around November 5, 2014, in accordance to the directions provided by the DTO to CS-1, law enforcement facilitated the change of the subject aircraft's tail number from N227LA to N117LB. That same day, law enforcement installed a tracker on subject aircraft pursuant to a tracker warrant.

12. From on or about November 10, 2014 through on or about November 14, 2014, a second FBI CS ("CS-2") had a series of consensually recorded meetings with DTO members, Frane Rudic Chipe ("Rudic"), Manuel Antonio Weisson ("Weisson"), and Wolfran Weisson ("Wolfran"), in the hangar. During the meetings, Wolfran and Weisson removed the chairs and floorboards of the subject aircraft to determine how many kilograms of cocaine could be secreted in the aircraft.

13. During the meetings, Rudic informed CS-2 that they could only fit 200 to 250 kilograms of cocaine on the aircraft. In addition, Rudic advised that the subject aircraft would be flown to the Cayman Islands and Trinidad and Tobago on its trip down to pick-up the load of cocaine. After being loaded, the aircraft would then make its way back to Fort Lauderdale Executive Airport and be subsequently stored in the hangar prior to being unloaded by members of the DTO.

14. On November 14, 2014, the subject aircraft departed Fort Lauderdale Executive Airport and traveled to the Cayman Islands. The flight manifest indicates that defendant Cannizzo travelled on this flight. Tracker information subsequently identified that subject aircraft traveled from the Cayman Islands to Trinidad and Tobago and then on to Venezuela. Subject aircraft further traveled from Venezuela to Curacao and back to the Cayman Islands before returning to Fort Lauderdale Executive airport on November 23, 2014. Upon arrival, the subject aircraft was stored in the aforementioned hangar. It

remained at that location and under constant electronic monitoring and physical surveillance until the arrest of the defendants, as set forth below.

15. On November 23, 2014, during a series of text messages between CS-1 and Peter Quevedo, an Ecuadorian citizen and member of the DTO, Quevedo informed the CS that they were unable to fit the entire 500 kilogram load into the subject aircraft.

16. On November 25, 2014, in a series of text messages from members of the DTO to CS-1 and CS-2, CS-2 was directed to arrive at the aforementioned hangar the following day to facilitate the unloading of the aircraft with members of the DTO.

17. On November 25, 2014, the Honorable Barry S. Seltzer, Chief United States Magistrate Judge, issued a search warrant for the aircraft.

18. During the afternoon of November 26, 2014, Cannizzo and Dupre independently traveled to and met with CS-2 at the hangar. While being consensually monitored, Cannizzo and Dupre, assisted by CS-2, facilitated the unloading of the aircraft. The unloading process was remotely monitored by law enforcement via video surveillance. *Law enforcement moved in, arrested Cannizzo and Dupre, and,*

19. At approximately 7:30 p.m., law enforcement executed the aforementioned search warrant of the aircraft and seized approximately 220 kilograms of suspected cocaine, which consisted of quantities that appeared to be cast by two different sized molds *from the airplane, the ground in the hangar, and the open trunk of a vehicle into which the defendants had placed it*. A representative sample of both sizes was field tested and resulted in a positive for the presence of cocaine.

20. *After* ~~Incident to the execution of the search warrant,~~ Cannizzo and Dupre were arrested, ~~and~~ *they* provided post-Miranda statements to law enforcement in which both admitted to traveling to the Southern District of Florida for the purpose of unloading

5

cocaine secreted on the aircraft.

21. Based on the foregoing, I submit that there is probable cause to believe that Cannizzo and Dupre conspired to and did possess with intent to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 2.

Leslie A. Beard
Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence, on this 21st day of November, 2014.

Barry S. Seltzer
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

DEFENDANT: Cristhian Hernan Dupre Arroba

PRE-TRIAL DETENTION (RISK OF NON-APPEARANCE)
(Personal Surety) (Corporate Surety) (Cash) (Pretrial Detention)

By: _____
ROBERT T. WATSON
ASSISTANT UNITED STATES ATTORNEY

Last Known Address: FEDERAL DETENTION CENTER

What Facility: FEDERAL DETENTION CENTER

Agent(s): FBI S/A LESLIE A. BEARD
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (OTHER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## BOND RECOMMENDATION

**DEFENDANT:** Marco Julio Cannizzo Gaona

**PRE-TRIAL DETENTION (RISK OF NON-APPEARANCE)**
(Personal Surety) (Corporate Surety) (Cash) (Pretrial Detention)

By: _/s/_
ROBERT T. WATSON
ASSISTANT UNITED STATES ATTORNEY

**Last Known Address:** FEDERAL DETENTION CENTER

**What Facility:** FEDERAL DETENTION CENTER

**Agent(s):** FBI S/A LESLIE A. BEARD
(FBI)   (SECRET SERVICE)   (DEA)   (IRS) (ICE)   (OTHER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-6416-BSS

United States of America

vs.

Cristhian Hernan Dupre Arroba
and
Marco Julio Cannizzo Gaona

        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
Robert T. Watson
Assistant United States Attorney
Florida Bar No. 0679429
99 N. E. 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9043
Fax: (305) 530-7976